## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 16 2018, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Thomas Lee Campbell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 16, 2018

Court of Appeals Case No.
18A-CR-598

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1705-F5-67

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Thomas Lee Campbell (Campbell), appeals his conviction for domestic battery by means of a deadly weapon, a Level 5 felony, Ind. Code § 35-42-2-1.3

We affirm.

# ISSUES

Campbell presents three issues on appeal, which we restate as:

(1) Whether the trial court's merger of the charges Campbell was found guilty of with his battery conviction was adequate to cure any potential double jeopardy concerns;

(2) Whether the State presented sufficient evidence beyond a reasonable doubt to support Campbell's conviction; and

(3) Whether Campbell's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

On May 20, 2017, after going to the grocery store and the laundromat, Jill Vestal (Vestal) returned to the home that she shared with her then-boyfriend of two years, Campbell. They had been living together for six months in Lafayette, Indiana. When Vestal arrived, Campbell was drunk, and a few hours later, he "passed out." (Transcript p. 8). While Campbell was passed out, Vestal changed the channel on the television. Campbell woke up and

began "screaming" about changing the TV channel. (Tr. p. 9). Vestal eventually walked to the kitchen, and was followed by Campbell, who grabbed a knife with a wooden handle and jagged edge. As Campbell swung the knife at Vestal, she managed to jump back, only sustaining a small puncture wound and a scratch on her chest. "[H]e [was] yelling and swearing when he was chasing [Vestal] around the residence with the knife." (Tr. p. 27). Vestal took her car keys and cell phone and ran out of the house. Once inside her car, she called 911.

[5] Lafayette Police Officer Blake Barker-Switzer (Officer Barker-Switzer) responded to the 911 call. After arresting Campbell, Officer Barker-Switzer conducted a protective sweep of the house and "[a]s [he] was walking through the kitchen [he] [saw] a wooden handled serrated kitchen knife sitting on the stove." (Tr. p. 32). "When [he] examined the knife closer, [he] found it covered in grease with the exception of the very, very, very, very tip of the blade." (Tr. p. 36). After close examination of Vestal's injury, Officer Barker-Switzer determined it was the result of a puncture wound.

[6] On May 25, 2017, the State charged Campbell with Count I, domestic battery by means of a deadly weapon, a Level 5 felony, I.C. § 35-42-2-1.3; Count II, battery by means of a deadly weapon, a Level 5 felony, I.C. § 35-42-2-1(c); Count III, intimidation, a Level 5 felony, I.C. § 35-45-2-1(a); Count IV, criminal recklessness, a Level 6 felony, I.C. § 35-42-2-2; and Count V, domestic battery, a Level 6 felony, I.C. § 35-42-2-1.3(a). On January 10, 2018, the trial court conducted a bench trial. During the trial, Campbell testified that he did

not touch Vestal but that she had scratched herself repeatedly on the chest while she sat in her truck. At the close of the evidence, the trial court found Campbell guilty on all Counts.

On February 8, 2018, the trial court conducted a sentencing hearing during which the trial court entered judgment and conviction as to the Level 5 domestic battery by means of a deadly weapon and merged the other guilty Counts into that conviction. The trial court sentenced Campbell to five years at the Department of Correction with one year executed, two years suspended to community corrections, and one year suspended to probation.

Campbell now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Merger of Counts*

Campbell first contends that the trial court should have vacated Campbell's convictions for Counts II through V to remedy any potential double jeopardy concerns. A double jeopardy violation occurs when judgments of conviction are entered and cannot be remedied by the practical effect of concurrent sentences or by merger after a conviction has been entered. *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008), *trans. denied*. Thus, "[a] trial; court's act of merging, without also vacating the conviction is not sufficient to cure the double jeopardy violation." Id. However, "a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is unproblematic as far as double jeopardy is concerned. *Green v.*

*State*, 856 N.E.2d 703, 704 (Ind. 2006); *See also Kovats v. State*, 982 N.E.2d 409, 414, 415 (Ind. Ct. App. 2013) (If a trial court does not formally enter a judgment of conviction on a jury verdict of guilty, then there is no requirement that the trial court vacate the conviction, and merger is appropriate to cure any double jeopardy issues).

[10] At the close of the bench trial, the trial court found Campbell guilty as charged. During the sentencing hearing and in its sentencing order, the trial court sentenced Campbell for Count I only, with all other Counts merging into Count I.[1] There is no evidence before us that the trial court entered judgment of conviction for Counts II through V. Accordingly, merger was adequate to remedy any potential double jeopardy concerns. *See Green*, 856 N.E.2d at 704.

## II. *Sufficiency of the Evidence*

[11] Next, Campbell contends that the State failed to present sufficient evidence beyond a reasonable doubt to support his conviction for domestic battery by means of a deadly weapon. When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the judgment. *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine

---

[1] During the sentencing hearing, the trial court explicitly noted "so we will show Judgment of Conviction entered then as to Count 1 Domestic Battery with a Deadly Weapon, a Level 5 Felony, as the parties agree that all of the remaining Counts merge into that Count." (Tr. p. 71).

whether it is sufficient to support a conviction. *Id*. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. *Id*. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id*. The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *See id*. Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[12] To convict Campbell of a Level 5 felony domestic battery by means of a deadly weapon, the State was required to establish beyond a reasonable doubt that Campbell knowingly or intentionally touched a family or household member with a deadly weapon in a rude, angry or insolent manner. *See* I.C. § 35-42-2-1.3(a)(1) & (c)(2). Not contesting any specific element of the charge, Campbell focuses on the discrepancies between the witnesses' testimonies. Specifically, he asserts that Vestal, Officer Barker-Switzer, and Campbell all presented different statements about the nature of the injury. Vestal claimed that she was cut in a bottom to top motion, whereas Officer Barker-Switzer believed it was a top to bottom angle, and Campbell testified that he had observed Vestal scratching herself with her fingernails. In other words, Campbell's argument amounts to a request to reweigh the evidence and judge the credibility of the witnesses. "It is for the trier of fact to resolve conflicts in the evidence and to

decide which witnesses to believe or disbelieve." Kilpatrick v. State, 746 N.E.2d 52, 61 (Ind. 2001).

[13] Moreover, considering the evidence most favorable to the judgment, the evidence is sufficient to sustain Campbell's conviction. Vestal testified that after changing the TV channel, Campbell started screaming at her. After the followed her into the kitchen, he picked up a knife, "swung it at [her] and [she] jumped back." (Tr. p. 24). By moving out of the way, Vestal only sustained a small puncture wound on her chest. Officer Barker-Switzer affirmed the presence of the knife in the kitchen and Vestal's puncture wound. Accordingly, we affirm Campbell's conviction for battery by means of a deadly weapon.

### III. *Appropriateness of Sentence*

[14] Next, Campbell complains that the sentence imposed is inappropriate. This court has the authority to revise a sentence authorized by statute if, "after due consideration of the trial court's decision," the court finds that the sentence is "inappropriate in light of the nature of the offense and the character of the offender." *See* Ind. Appellate Rule 7(B). "The 7(B) appropriateness inquiry is a discretionary exercise of the appellate court's judgment, not unlike the trial court's discretionary sentencing determination." *Knapp v. State*, 9 N.E.3d 1274, 1291-92 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015). "On appeal, though, we conduct that review with substantial deference and give due consideration to the trial court's decision—since the principal role of our review is to attempt to leaven the outliers, and not to achieve a perceived correct sentence." *Id.* at

1292 (internal quotation marks omitted). Accordingly, the question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks omitted). The defendant has the burden of persuading us that his sentence is inappropriate. *King*, 894 N.E.2d at 267.

[15] "'[R]egarding the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed.'" *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016) (*quoting Anglemyer*, 868 N.E.2d at 494). The advisory sentence of a Level 5 felony is imprisonment "for a fixed term of between one (1) months and six (6) years, with the advisory sentence being three (3) years." I.C. § 35-50-2-6(b). The trial court sentenced Campbell to five years in the Department of Correction with one year executed, two years suspended to community corrections, and one years suspended to probation.

[16] In the heat of a trivial domestic argument about a TV channel, Campbell escalated the discussion by picking up a weapon and using it. Although Campbell asserts that "Vestal's injury did not require hospitalization and/or treatment," the only reason the injuries were rather minimal was because Vestal was able to jump back when Campbell thrust the knife at her. (Appellant's Br. p. 13). Accordingly, the extent of Vestal's injury was not a result of Campbell showing "restraint, regard, and lack of brutality." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[17] When considering the character of the offender prong of our inquiry, one relevant consideration is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a defendant's prior criminal history will vary "based on the gravity, nature and number of prior offense as they relate to the current offense." *Smith v. State*, 889 N.E.2d 261, 263 (Ind. 2008). Campbell' criminal history spans more than forty years. During this time, Campbell has collected twenty misdemeanor convictions, and fourteen felony convictions. He was convicted of domestic battery in 2000. Even though there is a fourteen-year gap between the instant offense and the commission of Campbell's last offense, Campbell was not leading a law abiding life as he admitted to smoking marijuana twice per week between the ages of sixteen and fifty-eight. As pointed out by the trial court during sentencing, "when you are using and possessing illegal drugs during this entire period of time, [] it negates the position that it is a good and lawful behavior for a good period of time." In order to support his addiction habit, he started writing bad checks; however, it should be noted that he has paid restitution on every bad check since then. Campbell had six petitions to revoke his bond filed against him and, while on bond in the current case, he committed another crime. Despite a guilty finding after a bench trial, Campbell continued to blame Vestal and thinks "she is all about herself." (Appellant's App. Vol. III, p. 18).

[18] In light on the evidence before us, Campbell has not met his burden of persuading this court that the nature of the offense and his character make his sentence inappropriate. We affirm the trial court's sentence.

# CONCLUSION

[19] Based on the foregoing, we hold that (1) merger of the charges Campbell was found guilty of with his battery conviction was adequate to cure any potential double jeopardy concerns; (2) the State presented sufficient evidence beyond a reasonable doubt to support Campbell's conviction; and (3) Campbell's sentence is not inappropriate in light of the nature of the offense and his character

Affirmed.

Vaidik, C. J. and Kirsch, J. concur