## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 22 2017, 6:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Charles P. Clark,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 22, 2017

Court of Appeals Case No.
15A05-1706-CR-1432

Appeal from the Dearborn
Superior Court

The Honorable Sally A.
McLaughlin, Judge

Trial Court Cause No.
15D02-1704-F6-100

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Charles P. Clark (Clark), appeals his sentence following a guilty plea to two Counts of cruelty to an animal, Level 6 felonies, Ind. Code § 35-46-3-12(c).

We affirm.

# ISSUE

Clark presents us with one issue on appeal, which we restate as: Whether his sentence is inappropriate in light of the nature of the offenses and his character.

# FACTS AND PROCEDURAL HISTORY

On March 20, 2017, Clark's girlfriend reported to the Aurora Police Department, in Indiana, that Clark had been abusing their dog, a rescued boxer breed, named Dudley. She presented Sergeant Shane Slack (Sergeant Slack) with videos that she had secretly recorded in an attempt to catch Clark cheating on her with another woman "because he had been acting different lately." (Appellant's App. Vol. II, p. 8). The videos depicted Clark picking "the dog up and slam[ming] it [in]to the couch and then put[ting] it in a choke hold and begin[ing] to punch it repeatedly in the rib cage." (Appellant's App. Vol. II, p. 8). The animal attempted to escape the punishment and was crying. In another clip of the video, Clark is observed "stomping down on the dog as it was sitting on the floor below him on the couch." (Appellant's App. Vol. II, p. 8). After reviewing the videos, Sergeant Slack declared this to be "one of the worst cases I've seen in thirteen years as far as animal abuse." (Transcript p. 29). Police

officers arrested Clark at his home, where he admitted that he had abused the animal but that "afterwards he feels bad about it." (Appellant's App. Vol. II, p. 9).

On March 28, 2017, the State filed an Information, charging Clark with two Counts of cruelty to an animal, as Class A misdemeanors, which the State subsequently amended to Level 6 felonies. On April 26, 2017, Clark entered into a plea agreement with the State in which he agreed to plead guilty as charged and with sentencing left open to the trial court, with the exception that the sentences would run concurrent.

On May 25, 2017, the trial court conducted a sentencing hearing. During the hearing, Clark testified that he was forty-three years old and had no criminal history. He has four children from two previous marriages; he is ordered to pay child support for one child, and shares financial responsibility for two of the other children. Although Clark had been employed most of his adult life, he was unemployed at the time of the current charges. Clark testified that while he admitted to the offenses, he claimed not to remember them due to a black-out as a result of medication he was taking for his mental health problems. He stated that after he was confronted with the evidence, he "went into a very bad anxiety attack and [he] tried to commit suicide." (Tr. p. 21). Clark was admitted to the Community Mental Health Center for six days, where he received counseling and therapy. Concluding that the "nature of the offenses as depicted on the video demonstrate[d] extreme cruelty towards the animal with no provocation[,]" the trial court sentenced Clark to 910 days of incarceration

on each Count, with 365 days suspended to probation for each Count, and with sentences to run concurrently. (Appellant's App. Vol. II, p. 46).

[7] Clark now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[8] Clark contends that the trial court abused its discretion by imposing a sentence which is inappropriate in light of the nature of the offenses and his character. Pursuant to Indiana Appellate Rule 7(B), we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the question is not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The principal role of appellate review is to "leaven the outliers;" it is "not to achieve a perceived correct result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The appropriateness of the sentence turns on this court's "sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad other factors that come to light in a given case." *Id*. at 1224. The defendant carries the burden of persuading this court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). When assessing the nature of the offense and the defendant's character, the appellate court may look to any factors appearing in the record. *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). To successfully carry his burden,

"[t]he defendant must show that his sentence is inappropriate in light of both his character and the nature of the offense." *Williams v. State*, 891 N.E.2d 621, 633 (Ind. 2006).

[9] That an appellate court must give due consideration to the trial court's sentencing decision is based on "the trial court's unique perspective" during the sentencing process. *Kovats v. State*, 982 N.E.2d 409, 416 (Ind. Ct. App. 2013). Therefore, it must be understood that the deference accorded to a trial court's sentencing judgment "should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[10] When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer*, 868 N.E.2d at 494. The sentencing range for a Level 6 felony is between six months and two and one-half years, with the advisory sentence being one year. *See* I.C. § 35-50-2-7(b). Here, the trial court sentenced Clark to concurrent sentences of 910 days incarceration, with 365 days on each Count suspended to probation. Therefore, Clark effectively received a sentence of one and one-half years of imprisonment.

[11] Clark severely beat, punched, and strangled a helpless dog without any provocation. The animal was a family pet and the senseless violence occurred

on more than one occasion. While the visible injuries may have healed, Dudley continued to experience mental scars for a significant period of time after Clark relinquished the dog. Dudley's current owner, who adopted him approximately a week later, testified that Dudley, at first, was "very guarded" and "depressed." (Tr. p. 31). "It was like he was afraid to do anything except lay or sit. He was just scared." (Tr. p. 31). For a time, Dudley experienced "quite violent nightmares," during which he cried out loud and shook all over. (Tr. p. 33).

[12] Turning to Clark's character, we note that he has no criminal history, has been employed for most of his adult life, and showed remorse. Even though Clark admitted that he had abused Dudley after being confronted with the video recordings; nevertheless, during the sentencing hearing, Clark attempted to present himself as the victim by claiming that he had blacked out because of medication. However, besides his own self-serving statement, he presented no evidence that he was on any medication at the time of the offenses. While it is commendable that Clark has accepted his mental health problems and is seeking help, this acknowledgment is a bit late for Dudley. We conclude that Clark's sentence is not inappropriate in light of the nature of the offenses and Clark's character.

## CONCLUSION

[13] Based on the foregoing, we hold that the trial court's imposed sentence is not inappropriate in light of the nature of the offenses and Clark's character.

Affirmed.

Baker, J. and Brown, J. concur